## THE KING *vs.* H. M. McCHESNEY and THOMAS McGIFFIN.

BILL OF EXCEPTIONS TO RULINGS OF JUDD, C.J. AT JANUARY TERM.

APRIL TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ. FORNANDER, J., absent.

H. McC. and T. McG. were jointly indicted for the larceny at Honolulu, on the 22d October, 1886, of "certain moneys to wit, nine hundred and thirty dollars, of the value of $930, lawful money, current in this Kingdom, of the goods, chattels and moneys of M. W. McC. and another." There was also a count for receiving.

At the trial, H. McC. pleaded guilty to the larceny and not guilty to receiving. A *nolle prosequi* was entered against him on the second count.

T. McG. moved to quash the indictment on the grounds: "1st. That the law required two counts, and in said indictment the two so-called counts were not properly pleaded, not being separated and distinguished from each other. 2d. That the second so-called count is a mere reiteration of the charge of larceny, and does not legally and properly state the crime of receiving stolen goods, the same not being properly pleaded."

Held, affirming the decision of Judd, C.J., that the motion to quash was properly overruled, and that it is not necessary to place the number of the counts in the margin of the indictment.

Held also, that objections not taken to the indictment before plea could not be entertained on exceptions.

Held also, that H. McC. was not disqualified as a witness against T. McG.

Held also, that conversations between McC. and McG., testified to by a witness who overheard them, could not be excluded as confessions not made voluntarily.

Held also, that the indictment having alleged the stealing of $930, of the value of $930, lawful money, current in this Kingdom, and the proof being that the property stolen consisted of Spreckels' notes (*i.e.* certificates of deposit in a private bank), U. S. greenbacks and Hawaiian Treasury certificates, there was no variance.

Held also, that McC. was not an incompetent witness as being infamous: the law of this Kingdom is that the only crimes which disqualify a witness are perjury and subornation of perjury.

Held also, that the jury having found McG. guilty on the second count only, the verdict was not wrong in not finding on the first count (following *The King vs. Naone*, 2 Hawn., 746).

Held also, that although it was highly improper for the Attorney-General in his closing address to the jury to refer to the circumstance that McG. had not testified in his own behalf, yet it was not a ground for exception and could not be considered.

All the exceptions overruled.

OPINION OF THE COURT, BY PRESTON, J.

At the last January Term, the prisoners were prosecuted on an indictment, the material parts of which are as follows:

"That Henry McChesney and Thomas McGiffin of Honolulu, in the Island of Oahu, on the twenty-second day of October, 1886, feloniously did steal, take, and carry away from the office or counting room of M. W. McChesney and another, situate in Queen street, in said Honolulu, certain moneys to wit: nine hundred and thirty dollars of the value of nine hundred and thirty dollars, lawful money, current in this Kingdom, of the goods, chattels, and moneys of M. W. McChesney and another, whereby the said defendants are guilty of the crime of larceny in the second degree.

"And the Attorney-General aforesaid, upon his official oath aforesaid, doth further present that the said Henry McChesney and Thomas McGiffin, at Honolulu aforesaid, on the twenty-second day of October, A. D. 1886, feloniously and fraudulently did take, accept, and receive certain moneys to wit: nine hundred and thirty dollars of the value of nine hundred and thirty dollars, lawful money, current in this Kingdom, of the goods, chattels, and moneys of M. W. McChesney and another, then lately before feloniously stolen, taken, and carried away, they, the said H. McChesney and T. McGiffin, then well knowing the said last mentioned moneys to have been feloniously stolen, taken, and carried away," etc.,

To this indictment the defendant McChesney pleaded guilty to the first count and not guilty to the second.

The Attorney-General then entered a *nolle pros.* to the second count with respect to McChesney.

The defendant McGiffin, by his counsel, moved to quash the indictment on the grounds:

"1st. That the law required two counts, and in said indictment the two so-called counts were not properly pleaded, not being separate and distinguished from each other.

"2d.    That the second so-called 'count' is a mere reiteration of the charge of larceny, and does not 'legally and properly state the crime of receiving stolen goods, the same not being properly pleaded.'"

The motion, after argument, was overruled, and the defendant duly excepted, and pleaded not guilty to the whole indictment.

We are of opinion that the said motion to quash was properly overruled.

We understand the first objection to mean that the words "second count" are not placed opposite the commencement of the count. This is not necessary and certainly affords no ground for quashing the whole indictment.

The second objection states that the second count is merely a reiteration of the charge of larceny, and does not properly state the crime of receiving stolen goods.

We fail to see any charge of larceny against the defendants in the second count, but it appears to us, that the count is in the usual form charging a receipt of stolen goods and is sufficient.

It was argued before us, that there is no averment of time in respect to the larceny, that there is no proper description of the stolen property, and that it does not appear that the things charged to have been received were "the same goods, chattels and moneys," or any particular or specific part of the same referred to in the count for larceny.

Without deciding whether if these points or either of them had been taken in time, we should have held the indictment bad; it is sufficient to say, they were not taken at the trial before plea, and cannot, therefore, now be made available.

At the trial, the Crown called the defendant McChesney as a witness, to the introduction of whose evidence the defendant objected upon the grounds that his evidence was inadmissible for any purpose, for the reasons:

1st.   That he is admitted to be the principal offender, and not entitled under any circumstances to testify against McGiffin, who is admitted to be an accomplice.

2d.   An accomplice or co-defendant cannot testify upon the request of the prosecution, unless he is discharged from the record, which is not done in this case, as he was, upon his plea of guilty, remanded for sentence.

3d.   His admissions or confessions cannot be used against his co-defendant as evidence for any purpose, as McGiffin is not bound by them unless he agreed to and consented to them.

These objections were overruled, and the defendant duly excepted.

The witness was then sworn and testified as to several conversations with the defendant McGiffin, as to stealing money from the prosecutors, in whose employ the witness was, his father and grandfather composing the firm, and that it was eventually agreed between them that the witness should steal some money from the prosecutors when he could get the chance, and that on the day in question he watched for an opportunity, and that his brother having taken a drawer out of the safe with money in it, and having turned to attend to a Chinaman customer, the witness, while his brother's back was turned, took the money (certificates, as the witness called them) from out of a pocket-book which was lying on the top of the drawer, and put it in his vest pocket, replacing the pocket-book. That his brother came back and replaced the drawer in the burglar-proof box.   The witness then testified that he gave the stolen property to McGiffin, telling him at the time the particulars of the theft, and that, subsequently on the same evening, McGiffin in answer to an enquiry by the witness, stated that the amount was about $1000.   That the theft was discovered the next morning at about 9.30.   That his father accused witness, who at first denied all knowledge, but afterwards confessed and said he would go and get the money, that he tried to get the money back from McGiffin but was unsuccessful, and next saw him at the Station

House. The witness admitted that his father told him, if he got the money, he, (the father,) would not do anything to witness or McGiffin.

The witness was then examined as to a conversation between himself and McGiffin in Mr. Dayton's office, (Dayton being Deputy Marshal), no one else being present. The witness testified, "I told McGiffin if we got the money and returned it we would both get clear."

The Attorney-General then asked the witness "What conversation took place."

Counsel for defendant objected to the question upon the ground that the admissions of McChesney were not made freely and voluntarily, but under the influence of a threat and a promise, and were, therefore, inadmissible as evidence for any purpose and especially inadmissible against McGiffin, as they did not bind him ; 2d. That the conversations and statements of McGiffin in the Police office were inadmissible, because of the inducements offered to McGiffin by McChesney to get him to divulge his secrets; and 3d, That they were mere hearsay.

The objection was overruled, and the defendant duly excepted.

The witness continued : McGiffin said that if we pleaded not guilty we should both get off; and if I plead guilty, both would be stuck. All you have got to do is, to say you did not take it.

The defendant's counsel then objected to any testimony as to any and all alleged conversations occurring subsequent to the alleged transfer of the money to McGiffin, because they are irrelevant, incompetent, immaterial, and not the best evidence.

The objection was overruled, and the defendant duly excepted.

The witness continued : Had two conversations with him in Dayton's room, both in substance the same.

After testimony had been given, as to the amount stolen, which appeared to be $930, comprising one $100 and one $20 certificates of deposit in Spreckels' Bank ; one $20 and one $10 U. S. greenbacks, and the balance Hawaiian Treasury certificates of $50 and $20, Charles B. Reynolds, Agent for the Board of Health and Police Officer, was examined and deposed :

I remember hearing a conversation in the Deputy Marshal's office between McChesney and McGiffin on Sunday, 24th October.

Question. What did you hear at this conversation ?

Objected to on the ground—1st, that it was irrelevant, incompetent, and immaterial; 2d, that it was mere hearsay, and not an admission by McGiffin ; 3d, that the testimony of H. McChesney shows that he told McGiffin of his father's promise not to prosecute if the money was returned, and therefore these conversations were not free and voluntary, and were inadmissible.

The objection was overruled, and the defendant duly excepted.

The witness continued : The two defendants were brought into Dayton's room, where Dayton and I were ; I got into a small closet, and Dayton was called away by a pre-arranged plan. McChesney told McGiffin that his father and mother felt very bad about the affair, and the disgrace ; McChesney said, I will take all the blame, and let you off as easy as possible, if the money is returned, and begged McGiffin to tell him where it was; McGiffin's invariable reply was : I am on my trial, and they must prove it; he also said, Plead not guilty and brave it out, and we will get off. Heard a second conversation ; was on step-ladder and transom. McChesney said if McGiffin gave up the money he would take all the blame on himself, and say he planted it. McGiffin said, it is too late, we had better stand trial and brave it out, and let them prove it; McChesney asked McGiffin if he had changed any ; he said no; I then thought it referred to a change of clothing.

Other testimony was introduced which is not necessary to set out for the purposes of this case.

At the close of the case for the Crown, counsel for the defendant moved the Court for an order directing his acquittal, upon the grounds : First, that the prosecution had made no case against him; and Second, (a) that there was a fatal variance between the allegations of the indictment and the proof, in this, that he is charged in the first part with stealing

"$930 of the value of $930 lawful money, current in this King-dom," whereas the proof is that the property stolen consisted to . a large degree of "Spreckels' notes and U. S. greenbacks and some Hawaiian Treasury certificates," which are not lawful *money*, nor have the prosecution proved that these "certificates" are of any value whatsoever. (*b*) That there is a difference between the allegations and the proof, as the property is not ·identified in such a way that would enable him to plead ·an acquittal or conviction if subsequently charged with a larceny of the same thing; (*c*) that there is no proof of any amount of money whatsoever being stolen—no positive evidence of amount. That in the second part of the indictment he is charged with . receiving $930, etc. ; and there is a variance for the reasons stated under *a*, *b* and *c* above set forth, the said variances being the same variances mentioned above which are hereby referred to.

After argument, the motion was overruled and the defendant · duly excepted.

The defendant introduced evidence, but did not himself testify.

The Attorney-General, in his closing address to the jury, said : "That the alleged theft had been testified to, and the receipt of the money by McGiffin testified to, and that it remained uncon-tradicted, as defendant, McGiffin, did not see fit to take the witness stand and deny it." He was here interrupted by the Court, and the defendant noted an exception to these remarks.

The Court charged the jury, *inter alia*, to bring in a verdict of not guilty against McGiffin on the first count, and upon the· second count to find a verdict according to their view of the testimony.

The Court also instructed the jury that if they should find the defendant guilty upon the second count, they should also find whether the value of the stolen property received by the defendant was of the value of more than one hundred·dollars. ·

The jury found a verdict that the defendant was guilty of receiving stolen goods of a value of over $100, but returned no verdict on the first count.

The defendant excepted to the verdict on the ground that it was contrary to the law and the evidence, in that there was no evidence to warrant the verdict, and that it did not comply with the law of the case nor with the Judge's charge.

The case was argued at some length, and it was strenuously contended on behalf of the defendant, that his co-defendant was an incompetent witness as he was the principal felon, and was infamous.

In support of these propositions counsel cited:    1 Greenleaf on Ev., § 363, 379, 372.    People vs. Whipple, 9 Cowen, 707.    Rex vs. Turner, 1 Moody, C. C., 347.

With regard to the disqualification of the witness on the ground of infamy, our statute declares that the only crimes which disqualify a witness are perjury and subornation of perjury.    So without dissenting from the various authorities cited in support of this proposition, and which do not apply to the case before us, we must hold that the objection is not tenable.

As to the point of the incompetency of the witness as being the principal felon, we need only to refer to the citations from Greenleaf, Section 363, that final judgment must be pronounced against him, or he must have pleaded guilty; and Wharton's Am. Cr. Law, p. 585, "the thief is competent to prove the larceny;" to decide this point against the defendant.

The defendants' counsel objects to the testimony as to the conversations overheard between him and McChesney, his co-defendant, at the Police office, as being confessions made under the influence of a promise or inducement to confess, made to McChesney, and so operating upon the defendant's mind; and also to the evidence of McChesney himself, on the ground that he had been induced to confess under a promise of favor.

Many authorities were cited in behalf of the defendant to show that the confessions of one defendant could not be received as evidence against his co-defendant, and that confessions made under threats or a promise of favor could not be received as evidence.

There can be no doubt as to the law on this point, but we fail to see how it is made to apply to this case. We do not understand that any confession, made by McChesney to any third party, or that any confession made by the defendant, were offered. The testimony of McChesney was as to the facts relating to the larceny and receipt of proceeds by the defendant, and the testimony of Reynolds was as to conversations between the two defendants, and we cannot hold that any of this evidence amounted to confessions made by the defendant.

The main point, and which seemed to be most relied upon by the counsel for the defendant, was the alleged variance between the indictment and the proof.

In considering this point we must refer to the definition of money given in Section 21 of the "Act to regulate the practice and procedure in criminal cases." "In any indictment whatsoever in which it shall be necessary to make any averment as to any money or valuable security * * * it shall be sufficient to describe such money or valuable security simply as money, without specifying any particular coin or valuable security."

The indictment charges the larceny and receiving to be of "certain moneys to wit, nine hundred and thirty dollars of the value of nine hundred and thirty dollars, lawful money, current in this Kingdom."

We are of opinion that the money stolen, especially the Hawaiian Treasury certificates, was properly described as "money" in the indictment under the statute.

The treasury certificates are current, and pass from hand to hand as money, and the jury might well find that they were of the value represented on their face. It will be seen that the charge is not for stealing "lawful money, current in the Kingdom," but "money of the value of $930, of lawful money," etc.

And this will also cover the exception that there was no evidence of value.

The Court properly instructed the jury to find whether the value of the property received was above the value of one hundred dollars, as the law prescribes heavier punishment where the

8

value is one hundred dollars or more, than when the value is of less amount, and we think there was abundant testimony to support their verdict.

It is further objected that the verdict is wrong, as there is no finding on the first count (for larceny). The Court instructed the jury that there was no evidence to support this charge, and that they should acquit; and although it is always preferable that a jury should find specifically upon each count, yet it is not absolutely necessary, and this Court has so held in *The King vs. Naone*, 2 Hawn., 746, from which we see no reason to dissent.

There remains one more point for consideration, viz.: The observation made by the Attorney-General to the jury as to the defendant not offering himself.

This observation was highly improper, and contrary to the statute, but we do not consider it a ground for a bill of exceptions, and we do not think the defendant was prejudiced by it, as the Court at once interfered and directed the jury not to take notice of it.

It may be a ground for an application for a new trial but it cannot be considered now.

We overrule all the exceptions.

*A. P. Peterson*, (Deputy Attorney-General), for the Crown.

*Whiting, Creighton* and *A. C. Smith*, for the defendant.