STATE OF HAWAII *v.* CRAIG MARK GRAHOVAC.

No. 5019.

IN THE MATTER OF JAMES LAVIN.

No. 5025.

FEBRUARY 1, 1971.

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

528

OPINION OF THE COURT BY KOBAYASHI, J.

Before this court are two cases, consolidated for argument, each challenging the constitutionality of this State's vagrancy statute, HRS § 772-1.[1]

---

[1] HRS § 772-1:

"Vagrant defined; penalty. Every person without visible means of living who has the physical ability to work and who does not seek employment, nor labor when employment is offered him; or every person who roams about from place to place without any lawful business; or every person known to be a pickpocket, thief, burglar, or confidence operator, either by his own confession, or by his having been convicted of any such offenses, and having no visible or lawful means of support when found loitering around any steamboat landing, railroad depot, banking institution, broker's office, place of amusement, billiard parlor, auction room, store, shop, or crowded thoroughfare, car, or omnibus, or any public gathering or assembly;

## I. FACTS

In the first action, Craig Mark Grahovac is appealing an order of the Ewa District Magistrate on May 13, 1970, denying his motion to dismiss two charges of vagrancy under § 772-1 on the ground that the statute is unconstitutional.[2]

After his motion's denial and plea of not guilty, Grahovac was convicted of violating the following provisions of HRS § 772-1, defining "vagrant" as:

[Land of Another Provision]

"[E]very person who is found without lawful excuse

or every idle, or lewd, or dissolute person, or associate of known thieves, or who is wanton or lascivious in speech or behavior; every person who practices hoopiopio, hoounauna, hoomanamana, anaana, or pretends to have the power of praying persons to death; every person who has in his possession without lawful excuse (the proof of which excuse shall be upon such person) any false or skeleton key or any implement of house breaking; or *every person who is found without lawful excuse (the proof of which excuse shall be upon such person) in or upon the dwellinghouse, building, yard, or the land of another about or near any building used for dwelling purposes, or on board any vessel;* or *every person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business;* or every person who lodges in any barn, shed, shop, outhouse, vessel, or place other than such as is kept for lodging purposes, without the permission of the owner or party entitled to the possession thereof; or every person who lives in and about houses of illfame; or every common prostitute or every common drunkard; or every person who is dangerous by reason of his being a rioter, disturber of the peace, going offensively armed, uttering menaces, or threatening speeches or otherwise, is a vagrant and shall be fined not less than $10 nor more than $500, or imprisoned not more than one year, or both." (Emphasis added)

In deciding this case we rule on the validity of the two emphasized provisions only, *infra.*

[2] Appellant Grahovac's constitutional attacks on the entire statute at trial were as follows:

(a) The language was so vague as to, *e.g.*, leave citizens uncertain as to what it prohibits and was thus "void for vagueness" in violation of the Federal Constitution's 6th Amendment guaranteeing an accused to be informed of the nature and cause of the accusation against him and Due Process Clause of the 14th Amendment, and

(b) violated "equal protection of the laws" guaranteed by the Federal Constitution's 14th Amendment in that it used arbitrary classifications as elements and criteria of crime (unemployment, poverty and idleness), and punished a status (poverty), not an act.

(the proof of which excuse shall be upon such person) in or upon the dwellinghouse, building, yard, or the land of another about or near any building used for dwelling purposes, or on board any vessel; * * *" [hereinafter Land of Another Provision] and

[Wandering Provision]

"[E]very person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business; * * *" [hereinafter Wandering Provision].

The second action is an original proceeding brought to this court by James Lavin who was arraigned on HRS § 772-1, Wandering Provision, *supra,* as a co-defendant along with Grahovac. Choosing to represent himself, Lavin plead not guilty. He was subsequently convicted as charged.

After the granting of his Motion for Appointment of Counsel, Lavin further petitioned this court on September 11, 1970, seeking issuance of an Order to Show Cause against his jailer, requesting release because of conviction under an unconstitutional statute. Following a hearing on September 24, 1970, we ordered his action consolidated for argument with appellant Grahovac's case. More of the essential facts follow.

On April 15, 1970, while walking through an Ewa Beach residential district about 1:00 a.m., Grahovac and Lavin were stopped by a patrolling policeman after seeing one of them drop "a piece of cloth" and recognizing Grahovac from previous "criminal activity" in the Aiea area. The officer then asked and was told where they had been and their destination. Their place of origin as reported was known to him as a spot "where youths congregate and sniff paint."

At trial, the officer testified that Lavin was incoherent, but that Grahovac was in good condition, although di-

sheveled in appearance. He further stated that the place where he encountered the two defendants was two to three blocks out of line with the route they claimed to be taking, and that following this questioning he had arrested defendants for vagrancy. (Wandering Provision, *supra*.)[3]

While awaiting trial on the above charge, on May 5, 1970, Grahovac was seen with a companion running from the doorway of a garment factory by two policemen responding to a burglar alarm in the factory. The two officers pursued and tackled both individuals in an adjoining parking lot.

The police then asked Grahovac what he was doing in the area and were told both had just urinated against the factory door. Upon inspection, a third officer found only scuff marks around the door knob but was unable to tell if these marks were fresh. Grahovac was then arrested for vagrancy. (Land of Another Provision, *supra*.)[4]

For his two vagrancy convictions, Grahovac was sentenced to respective prison terms of six and nine months to run consecutively. Lavin was sentenced to nine months' incarceration for his single vagrancy violation.

Today we hold unconstitutional both the Land of Another and The Wandering Provisions of HRS § 772-1.

## II. SEVERABILITY OF HRS § 772-1'S PROVISIONS

Each of the twelve provisions of HRS § 772-1 independently defines an offense and calls for the completion of a criminal act. The substantive prohibitions including

---

[3] Defendant Lavin was also arrested for, and later convicted of, unlawful inhalation under HRS § 330-8, not in issue here. He was sentenced to three months' confinement for this offense, to run consecutively with his vagrancy commitment.

[4] Both the garment factory and parking lot were private property. Grahovac's companion was likewise arrested for vagrancy. However, neither was ever arrested for or charged with any other offense in connection with this incident.

the Land of Another and the Wandering Provisions are therefore statutorily severable. *Territory* v. *Hoy Chong,* 21 Haw. 39, 42 (1912).

Appellant and petitioner argue, however, that one oral charge below[5] "demonstrates that the status of poverty is in fact the lowest common denominator" of HRS § 772-1, and that consequently the entire statute should be held unconstitutional.[6]

While poverty by itself cannot be made an element of crime,[7] it is also true that a criminally accused has "standing" to constitutionally challenge only the specific penal sanctions with which he is charged. *State* v. *Willburn,* 49 Haw. 651, 654, 426 P.2d 626, 629 (1967).

The fact that an oral charge contains language which is surplusage to the crime as statutorily defined could render non-criminal the act charged but cannot serve to enlarge an accused's "standing" at trial.

### III. CONSTITUTIONALITY OF THE LAND OF ANOTHER PROVISION

The Federal Constitution's 5th Amendment guarantee that "[n]o person * * * shall be compelled in any Criminal

---

[5] Grahovac and Lavin each on one count of vagrancy were orally charged as follows: that he was "* * * found to be a person wandering about the streets at late or unusual hours without any visible *means of support* or lawful business; * * *." (Emphasis added)

The emphasized language above does *not* appear in the text of HRS § 772-1, Wandering Provision. (*See* opinion text, pp. 2-3.)

[6] In addition to those attacks made at trial, n. 2, *supra,* appellant and petitioner argued the following federal, and corresponding state, constitutional infirmities:

(a) punishing and status of being poor despite the absence of criminal act or intent inflicts cruel and unusual punishment in violation of the 8th and 14th Amendments;

(b) permitting arrests based on suspicion, or other standards not amounting to probable cause, violates the 4th Amendment;

(c) freedom of movement is unreasonably restricted in violation of the 9th Amendment and Due Process Clause of the 5th Amendment.

[7] Edwards v. California, 314 U.S. 160, 184-185 (1941) (concurring opinion of Mr. Justice Jackson); Wheeler v. Goodman, 306 F. Supp. 58, 62 (W.D.N.C. 1969).

Case to be witness against himself * * *" has been held binding on this State. *Malloy* v. *Hogan,* 378 U.S. 1, 6 (1964). Our State Constitution in Art. I, § 8 likewise assures this right in identical language.

As stated in part in *Kaneshiro* v. *Belisario,* 51 Haw. 649, 466 P.2d 452 (1970), at pages 652-653, where we quoted from *Tehan* v. *Shott,* 382 U.S. 406, 415-416 (1966),

"[T]he basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulder the entire load.' * * * [T]he federal privilege against self-incrimination reflects the Constitution's concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life," ' * * *." (Footnote omitted)

Thus, the prosecution must by its own efforts secure evidence against one criminally suspect rather than resort to the "* * * simple expedient of compelling it from his own mouth." *Miranda* v. *Arizona,* 384 U.S. 436, 460 (1966). Nor may it use as evidence the fact one remained silent or asserted this right in the face of accusation. *Id.* at 468, n. 37.

In effecting this policy, our safeguards for this right must at least comport with United States Supreme Court standards. *Malloy* v. *Hogan, supra* at 11. But we are nonetheless free to go beyond these requisites in protecting one's right of silence under the State Constitution. *Miranda, supra* at 490; *accord, State* v. *Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967).

It is clear that the right's protection is available outside the courtroom, for although investigating police may

request that a citizen voluntarily answer questions, they may not compel responses.[8] Any practice overriding a person's choice to talk to the police violates his right to silence.

Manifestly, then, a state by legislative enactment cannot abrogate this right by empowering police and judiciary to compel communication. Nor may a statute impose criminal liability for failing to speak. *Leary* v. *United States,* 395 U.S. 6, 28 (1969).[9]

Granted, it is a function of the criminal law to protect private rights. But HRS § 772-1, Land of Another Provision, making criminal one's presence on another's property "without lawful excuse (the proof of which excuse shall be upon such person)" destroys this person's right to silence. In this context, a statement voluntarily made is one thing, but arrest and prosecution based on a statement compelled or *not* made is quite another.

The State's contention that constitutionality could be preserved if only the parenthetical language be stricken is untenable for two reasons. The word "excuse" itself plainly calls for some explanation by the suspect. Furthermore, the parenthetical phrase not only confirms this meaning, but authoritatively expresses legislative intention that "excuse" have no other construction. Such internal legislative construction is binding on this court. *Pan Am. Air. Co.* v. *Godbold,* 36 Haw. 170, 177 (1942).

The provision is, therefore, unconstitutional.

## IV. CONSTITUTIONALITY OF THE WANDERING PROVISION

It is fundamental that a penal statute clearly define proscribed behavior, for failing this, definitional uncer-

---

[8] Davis v. Mississippi, 394 U.S. 721, 727, n. 6 (1969).

[9] Where compliance with transfer tax provisions of federal Marijuana Tax Act would have exposed defendant to prosecution under state narcotics laws, a plea of self-incrimination was a complete defense in a prosecution for non-compliance.

tainty denies an accused "due process of law" guaranteed by the 14th Amendment to the Federal Constitution and Art. I, § 2 of the Constitution of Hawaii. *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 (1926); *State* v. *Abellano,* 50 Haw. 384, 385, 441 P.2d 333, 334 (1968).

A law of vague meaning falls short of "due process" demands when it neither gives fair notice to a person what conduct is prohibited nor prescribes fixed standards for adjudging guilt when that person stands accused. *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402-403 (1966). Additionally in application, such legislation provides "for government by the moment-to-moment opinions of a policeman on the beat."[10]

Plainly in light of these precepts, HRS § 772-1, Wandering Provision's sanction against one who "wanders about the streets at late or unusual hours of the night, without any visible or lawful business" is too limitless and hence unconstitutional. *Accord, Ricks* v. *District of Columbia,* 414 F.2d 1097 at 1107 (1968).

The word "wanders" delineates no ambit of conduct susceptible to agreed understanding. Whether any and all walking is included in "wandering" is a definitional mystery that subjects a pedestrian to the unbridled discretion of an officer whose standard for law enforcement is equally as nebulous.

Amorphous conditions of time and purpose lend no specificity. "Late or unusual hours" depend totally upon personal fancy. "Business" could apply to vocational, recreational, or whimsical pursuit.

The State may not require such guesswork from its citizens in the face of criminal liability. This provision is also void.

---

[10] Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90 (1965) quoting Cox v. Louisiana, 379 U.S. 536, 579 (1965) (separate opinion of Mr. Justice Black).

536

## V. CONCLUSION

For the reasons set forth above, the vagrancy convictions of appellant Grahovac and petitioner Lavin are null and void and are hereby set aside and the judgments entered therein are vacated.

We further hold that petitioner Lavin's consecutive three months' sentence for unlawful inhalation, also imposed on May 13, 1970, *supra,* n. 3, began to run as of that date when he commenced serving his nine month vagrancy sentence. *Blitz* v. *United States,* 153 U.S. 308, 318 (1894); *State* v. *Smith,* 267 N.C. 755, 756, 148 S.E.2d 844, 845-846 (1966). He will thereby receive full credit on the valid sentence for all time served under the invalid commitment.

*John S. Edmunds,* Chief Deputy Public Defender, and *Andrea Levin,* Deputy Public Defender (*Brook Hart,* Public Defender, with them on the briefs), for defendant-appellant and petitioner.

*Leland H. Spencer,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the brief), for plaintiff-appellee.