18 P.3d 203

STATE of Hawai'i, Plaintiff–Appellee,

v.

Mitchell PERALTO, Defendant–
Appellant.

State of Hawai'i, Plaintiff–Appellee,

v.

Monica Alves Peralto, Defendant–
Appellant.

Nos. 21788, 21794.

Supreme Court of Hawai'i.

March 2, 2001.

Susan L. Marshall, Lihue, on the briefs, for defendant-appellant Monica Alves Peralto.

Daryl Y. Dobashi, Lihue, on the briefs, for defendant-appellant Mitchell Peralto.

Tracy Murakami, Deputy Prosecuting Attorney, for plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by NAKAYAMA, J.

Defendants-appellants Monica Alves Peralto (Monica) and Mitchell Peralto (Mitchell) appeal their convictions of one count of kidnapping, in violation of Hawai'i Revised Statutes (HRS) § 707–720 (1993), and one count of murder in the second degree, in violation of HRS § 707–701.5 (1993), their extended term sentences of life imprisonment with the possibility of parole under HRS §§ 706–661 and 706–662 (Supp.1999), and their enhanced sentences of life imprisonment without the possibility of parole under HRS § 706–657 (Supp.1999). On appeal, Monica argues that the circuit court erred by: 1) denying her motion for a change of venue or, in the alternative, recusal of the trial judge; 2) denying her motions for judgment of acquittal based on insufficient evidence; 3) limiting discovery of evidence relating to Tony Gonzalez, the victim's former boyfriend, and excluding evidence of his prior conviction of assaulting the victim; 4) failing to provide her with sufficient opportunity to prepare an adequate defense; 5) imposing the extended term sentence; and 6) imposing the enhanced sentence. Monica additionally asserts: 7) a violation of her constitutional right to confrontation; 8) ineffective assistance of counsel; and 9) prosecutorial misconduct. Mitchell alleges ineffective assistance of counsel and/or error by the trial court in 1) allowing Monica's counsel to represent Mitchell and waive his presence at a preliminary hearing, 2) excluding evidence pertaining to Gonzalez's prior abuse of the victim, and 3) imposing the extended term sentence.

Upon careful review of the parties' arguments and the record, we affirm Monica's and Mitchell's convictions and extended sentences.[1] We take this opportunity, however,

---

1. Specifically, we rule as follows. The trial court did not abuse its discretion in denying Monica's motion for a change of venue, pending voir dire at jury selection, *cf. State v. Wakinekona,* 53 Haw. 574, 499 P.2d 678 (1972); *State v. Moyd,* 1 Haw.App. 439, 619 P.2d 1107 (1980), nor did it abuse its discretion in denying Monica's alternative motion for recusal of the trial judge, given the attenuated nexus between the prior sexual assault case involving Monica and the present case, *see State v. Ross,* 89 Hawai'i 371, 377–80, 974 P.2d 11, 17–20 (1998). "[U]pon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact," *State v. Vliet,* 91 Hawai'i 288, 292, 983 P.2d 189, 193 (1999) (citation and

to address an issue of first impression raised by Monica in this case, namely, the constitutionality of the enhanced sentencing statute, HRS § 706–657. Contrary to Monica's claim, we determine that the statute is not unconstitutionally vague. Nevertheless, because we hold that *State v. Young*, 93 Hawai'i 224, 999 P.2d 230 (2000), applies retroactively, we vacate the Peraltos' enhanced sentences and remand the cases to the circuit court for HRS § 706–657 hearings to be conducted in accordance with *Young*.

## I. BACKGROUND

We present a brief summary of the case as it relates to the issue addressed in this opinion. On July 14, 1997, the prosecution filed complaints charging Monica and Mitchell with the kidnapping and murder of Kimberley Washington–Cohen. The complaints further alleged that, because the murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity," Monica and Mitchell were subject to enhanced sentences pursuant to HRS §§ 706–656 and 657. The

cases were consolidated on November 13, 1997.

On November 26, 1997, Monica moved to dismiss the second degree murder count, arguing that the language "especially heinous, atrocious, or cruel, manifesting exceptional depravity" was void for vagueness. The court denied the motion in an order dated January 16, 1998, stating that "the phrase attacked as being vague means 'a conscienceless or pitiless crime which is unnecessarily torturous to a victim' as stated in HRS 706–657."

Trial commenced on January 5, 1998. According to prosecution witnesses, on July 11, 1997, at about 10:00 p.m., Monica and Mitchell arrived at the residence where Washington–Cohen had spent the night and proceeded to physically and verbally attack her by, *inter alia,* yelling at her, punching, kicking, and slapping her, pulling her hair, and attempting to glue her mouth shut.

Monica ordered Washington–Cohen to kneel on the kitchen floor, then took turns with Mitchell in taping her mouth, binding

quotation marks omitted), the court did not err in denying Monica's motions for judgment of acquittal. The court did not err in excluding evidence and limiting discovery relating to Gonzalez, nor did any prosecutorial misconduct or ineffective assistance of counsel arise in relation to any alternative theory of the crime involving Gonzalez, absent "evidence to directly connect [Gonzalez] to the crime charged which is not remote in time, place or circumstances." *State v. Rabellizsa*, 79 Hawai'i 347, 350, 903 P.2d 43, 46 (1995). Where the court specifically instructed the jury to consider Mitchell's statements to a witness, Gary Palmeira, in relation to Mitchell alone and to ignore any reference to "they" by Mitchell in Palmeira's testimony, no violation of Monica's right to confrontation occurred. *See State v. Torres*, 70 Haw. 219, 768 P.2d 230 (1989); *State v. Tucker*, 10 Haw.App. 43, 861 P.2d 24, *cert. granted and remanded on other grounds*, 74 Haw. 652, 857 P.2d 600 (1993).

We reject as meritless Monica's claims that counsel was ineffective for lack of sufficient opportunity to prepare and by failing to establish an alibi defense, to adequately support Monica's motion to dismiss the complaint for the loss of evidence, to oppose the prosecution's motion in limine requesting exclusion of any issues regarding the prior case involving Monica, and to oppose the prosecution's motion for joinder of defendants. *See generally State v. Janto*, 92 Hawai'i 19, 31, 986 P.2d 306, 318 (1999). Mitchell has

also failed to carry his burden of proving ineffective assistance of counsel based on the absence of counsel and waiver of Mitchell's presence at the December 29, 1997 pretrial hearing and the absence of counsel during the return of the jury's verdict. *See State v. Richie*, 88 Hawai'i 19, 45, 960 P.2d 1227, 1253 (1998).

As for the extended term sentences, the prosecution afforded adequate notice of the grounds for the extended terms in reciting the specific statutory subsection relating to "multiple offenders," HRS § 706–662(4) (Supp.1999), and stating the two offenses of which the defendants were convicted. The court provided adequate findings in support of the extended terms by citing the relevant statute, finding that the defendants committed two felonies, and determining that extended terms were "necessary for the protection of the public" based on the "heinous, atrocious, and cruel" manner in which the crimes were committed, *see State v.. Tamura*, 63 Haw. 636, 639, 633 P.2d 1115, 1118 (1981) (manner in which defendant committed the offense is proper basis for extended term sentence). The court did not err in allowing Monica and Mitchell to address the various sentencing issues "at one time," *see State v. Okumura*, 78 Hawai'i 383, 412–13, 894 P.2d 80, 109–10 (1995) (requiring a two-step inquiry in imposing extended term sentences), where the court initially took judicial notice of the records, files, evidence, and testimony at trial, and the jury had already found defendants guilty of the two offenses.

her wrists behind her back with tape, and winding tape around her body and ankles. Monica draped a white "hospital blanket" over Washington–Cohen's head and torso and wrapped tape around the blanket from the top of Washington–Cohen's head down to her waist. Monica said, "Didn't I tell you, you lying little bitch, that the next time you stole from me I would kill you." Monica and Mitchell drove off with Washington–Cohen in the back seat of their car; one of the prosecution witnesses testified that she could hear Washington–Cohen saying, "Ow, ow." Washington–Cohen was never seen alive again.

Police found Washington–Cohen dead and buried in a shallow grave the next morning. Her mouth, arms, wrists, and ankles were bound with tape. A blanket was taped around her head and torso. In addition, two plastic bags were tied around her head, over the blanket.

Dr. Anthony Manoukian concluded that the cause of death was suffocation and that, "[w]ith the tape around the mouth, the blood in the nose, the wet blanket around the head, and two plastic bags tied around the head, it would be my opinion that death would follow fairly rapidly. Perhaps within 15, 20 minutes, most probably less than an hour."

On January 22, 1998, the jury convicted Monica and Mitchell on both counts. The jury also found, via special interrogatory, that Monica and Mitchell committed the murder in a manner that was "heinous, atrocious or cruel, manifesting exceptional depravity," defined in the interrogatory as "a consciousless act or pitiless crime which is unnecessarily torturous to a victim." The court sentenced both Monica and Mitchell to an enhanced sentence of life without the possibility of parole for the murder, terms to be served consecutively with their extended sentences of life with the possibility of parole for kidnapping. The court entered final judgment on July 10, 1998. Monica and Mitchell timely appealed.

## II. DISCUSSION

### A. Standard of review

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (quoting *State v. Carvalho*, 90 Hawai'i 280, 285, 978 P.2d 718, 723 (1999)) (internal citations and quotation marks omitted).

### B. HRS § 706–657 is not unconstitutionally vague.

■ Monica argues that the circuit court erred in imposing an enhanced sentence of life imprisonment without possibility of parole under HRS § 706–657 because the statute is unconstitutionally vague. We have previously stated:

> Due process of law requires that a penal statute [or ordinance] state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute [or ordinance] is void for vagueness. Statutes [or ordinances] must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.

*State v. Tripp*, 71 Haw. 479, 482, 795 P.2d 280, 282 (1990). This standard is essentially indistinguishable from the applicable standard under federal law. Thus we have so far not departed from federal constitutional law in the area of "void for vagueness" challenges to criminal statutes [or ordinances].

> . . . [U]nder the applicable federal law, a criminal statute [or ordinance] is void for vagueness unless: it 1) "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he [or she] may act accordingly[;]" and 2) "provide[s] explicit standards for those who apply" the statute, in order to avoid "arbitrary and discriminatory enforcement" and the delega[tion] of basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis[.]" *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

*State v. Kamal*, 88 Hawai'i 292, 294–95, 966 P.2d 604, 606–07 (1998) (quoting *State v. Lee*, 75 Haw. 80, 92–93, 856 P.2d 1246, 1254 (1993)) (alterations in original).

> HRS § 706–657 provides in pertinent part:
> The court may sentence a person who has been convicted of murder in the second degree to life imprisonment without possibility of parole under section 706–656 if the court finds that the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity.... As used in this section, the phrase "especially heinous, atrocious, or cruel, manifesting exceptional depravity" means a conscienceless or pitiless crime which is unnecessarily torturous to a victim....

Monica argues that the phrase "especially heinous, atrocious, or cruel, manifesting exceptional depravity" does not provide adequate notice of the conduct which is prohibited. We disagree.

In *State v. Young*, 93 Hawai'i 224, 999 P.2d 230 (2000), we adopted a two-factor analysis to determine whether a murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity." The prosecution must prove and the jury must unanimously find, beyond a reasonable doubt, that the defendant intentionally or knowingly inflicted unnecessary torture on the victim and that the victim suffered unnecessary torture. *Id.* at 236, 999 P.2d at 242. We defined "unnecessary torture" as "the infliction of extreme physical or mental suffering, beyond that which necessarily accompanies the underlying killing." *Id.* at 234, 999 P.2d at 241.

The United States Supreme Court has held that the "especially heinous, atrocious, or cruel" language, without more, is unconstitutionally vague. *Maynard v. Cartwright*, 486 U.S. 356, 363–64, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). HRS § 706–657, however, further defines a murder that is "especially heinous, atrocious, or cruel, manifesting exceptional depravity," as a "conscienceless or pitiless crime which is unnecessarily torturous to a victim." In *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Court upheld a Florida statute that included the "especially heinous, atrocious, or cruel" aggravating factor because it had been sufficiently limited through case law. The *Proffitt* Court stated:

> [The Florida Supreme Court] has recognized that while it is arguable "that all killings are atrocious, ... (s)till, we believe that the Legislature intended something 'especially' heinous, atrocious or cruel when it authorized the death penalty for first degree murder." As a consequence, the court has indicated that the ... provision is directed only at "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon*, 283 So.2d [1,] 9 [ (Fla.1973) ]. We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases.

428 U.S. at 255–56, 96 S.Ct. 2960 (footnote and some citations omitted) (some alterations in original). *See also Sochor v. Florida*, 504 U.S. 527, 536–37, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992).[2]

The HRS § 706–657 definition of "especially heinous, atrocious, or cruel" is virtually identical to the *Dixon* definition upheld by the United States Supreme Court in *Proffitt*. We further clarified the HRS § 706–657 definition in *Young*, holding that the defendant must have intentionally or knowingly inflicted, and the victim must have suffered, unnec-

2. The "unnecessarily torturous" limitation was only part of the definition given by the Florida Supreme Court in *Dixon*. The court stated:

> It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such

> additional acts as to set the crime apart from the norm of capital felonies-the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

283 So.2d at 9. However, in *Sochor*, the United States Supreme Court, noting that the Florida Supreme Court had occasionally invoked the entire *Dixon* definition, emphasized that *Proffitt* approved only the "conscienceless or pitiless crime which is unnecessarily torturous to the victim" language. 504 U.S. at 536–37, 112 S.Ct. 2114.

essary torture, which is the infliction of extreme physical or mental suffering beyond that necessarily accompanying the underlying killing. 93 Hawai'i at 234–35, 999 P.2d at 240–41. This definition is not the type of limitless provision we held unconstitutionally vague in *State v. Grahovac*, 52 Haw. 527, 480 P.2d 148 (1971), cited by Monica. The statute at issue in *Grahovac* defined a vagrant as, *inter alia*, "every person who wanders about the streets at late or unusual hours of the night, without any visible or lawful business...." HRS § 772–1 (1968). We noted that there was no definitive method to discern whether any and all walking constituted wandering or what constituted "late or unusual hours" or "business." *Grahovac*, 52 Haw. at 535, 480 P.2d at 153. In contrast, HRS § 706–657, as construed in *Young*, is not susceptible to application under limitless circumstances. While all murders are arguably heinous, atrocious, or cruel, the statute addresses only the exceptional case in which the victim has been subjected to extreme mental or physical suffering, beyond that which was necessary to cause death. *Young*, 93 Hawai'i at 235 & n. 4, 999 P.2d at 241 & n. 4. In addition, the defendant must have intentionally or knowingly inflicted such suffering upon the victim. These requirements describe reasonable limits on the range of circumstances under which courts may impose enhanced sentences.

Based on the statute's language, we hold that HRS § 706–657 provides adequate guidance to a fact-finder charged with determining whether a murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity." HRS § 706–657 provides adequate notice to the person of ordinary intelligence that an enhanced sentence may be imposed if he or she intentionally or knowingly inflicts unnecessary torture on the murder victim and the victim in fact suffers unnecessary torture. These requirements provide explicit standards for those who are to apply the statute, thereby avoiding arbitrary, discriminatory, and subjective enforcement. Therefore, we hold that HRS § 706–657 is not unconstitutionally vague.

**C. *Young* applies retroactively, and the prosecution may conduct a rehearing in which the jury shall be instructed according to *Young*.**

In the present case, the trial court instructed the jury on the statutory definition of "especially heinous, atrocious, or cruel." Because we issued our decision in *Young* during the pendency of the Peraltos' appeal, the jury was not instructed according to *Young*. If *Young* applies retroactively, the Peraltos' enhanced sentences must be vacated and the cases remanded for a new sentencing hearing[3] in which a jury would be instructed according to *Young*.[4]

Although judicial decisions are assumed to apply retroactively, such application is not automatic. As we have stated, "The Constitution neither prohibits nor requires retrospective effect.... Free to apply decisions with or without retroactivity, the Court's task is to exercise its discretion, weighing the merits and demerits of retroactive application of the particular rule." *State v. Santiago*, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971) (citations omitted). In *Santiago*, we held that *State v. Cuevas*, 53

---

3. For examples of bifurcated adjudicative and penalty proceedings where the court may empanel a new jury after the appellate court remands the case for a new penalty proceeding, *see, e.g.,* Ala.Code § 13A–5–46(b) (1994), Del.Code Ann. tit. 11 § 4209(g)(4) (1995), Utah Code Ann. § 76–3–207(5)(a) (1999), Wash. Rev.Code Ann. § 10.95.050(4) (West 1990).

4. In *Young*, we did not address the procedure for an HRS § 706–657 hearing on remand after the enhanced sentence has been vacated on appeal. The prosecution in *Young* was not entitled to a new HRS § 706–657 hearing because we held that there was insufficient evidence that the murder was especially heinous, atrocious, or cruel. In the present case, neither Mitchell nor Monica argue that the murder was not especially heinous, atrocious, or cruel. Because the sufficiency of the jury instruction is a procedural error, remand for an HRS § 706–657 hearing is possible in the present case. We hold that, where a defendant's enhanced sentence under HRS § 706–657 is vacated on appeal based on a procedural error, the prosecution may elect to conduct a new HRS § 706–657 hearing or may consent to resentencing without the enhancement. If the HRS § 706–657 issue was originally decided by a jury, a new jury shall be empaneled for the hearing on remand unless the parties agree to waive the jury and conduct the hearing before the court.

Haw. 110, 488 P.2d 322 (1971), which found a certain jury instruction invalid, would be applied retroactively. We noted the "curious lacework" of United States Supreme Court decisions regarding retroactivity and recognized that:

> In making [those] determination[s], the [United States Supreme] court [sic] has given consideration to three factors: (a) the purpose to be served by the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*Santiago,* 53 Haw. at 268–69, 492 P.2d at 665–66, (citations omitted). In another case, we stated that "[f]actors to be considered include: Prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; interests in the administration of justice and the integrity of the judicial process." *Russell v. Blackwell,* 53 Haw. 274, 277, 492 P.2d 953, 956 (1972).

> Implicit in the factors described in *Santiago* and *Russell* is the concept of fairness. Thus, where substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only.

*State v. Ikezawa,* 75 Haw. 210, 220–21, 857 P.2d 593, 598 (1993) (footnote omitted) (some alterations in original); *see also State v. Kekona,* 77 Hawai'i 403, 411 n. 3, 886 P.2d 740, 748 n. 3 (1994) (Levinson, J., concurring and dissenting) (quoting *Powell v. Nevada,* 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) (citation omitted and emphasis added)) (stating that " 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final' "). *Young* presents a new rule of law insofar as it created a new analysis of whether a murder is especially heinous, atrocious, or cruel under HRS § 706–657. Thus, to determine whether *Young* will be applied retroactively,

we examine *Young* and the present case under the *Santiago* framework.

The purpose behind HRS § 706–657 is to "give the court discretion, based upon the circumstances of the crime, ... to judge when the circumstances of the murder justify the imposition of a life sentence without parole." Stand. Comm. Rep. No. 1171, in 1993 House Journal, at 1470. The *Young* two-part analysis and definition of unnecessary torture provide trial courts with further guidance regarding when the imposition of an enhanced sentence under HRS § 706–657 is appropriate.

We next examine the reliance on the pre-*Young* standards. The trial court instructed the jury regarding the statutory definition of "especially heinous, atrocious, or cruel, manifesting exceptional depravity." Monica and Mitchell and the prosecution presented their evidence and their arguments regarding the applicability of HRS § 706–657 according to the existing standard.

Finally, we address the effect that retroactivity would have on the present case and on the judicial system in general. Although the parties may have proceeded differently if they had known about the *Young* standards, we cannot state that the Peraltos were irreparably prejudiced by their reliance on the pre-*Young* standards. Any prejudice that they may have suffered can be cured by granting them a new HRS § 706–657 hearing in which the parties and the jury are required to address the *Young* standards. Further, retroactive application of *Young* would not impose a heavy burden upon the judicial system because a relatively small number of cases present similar circumstances. Therefore, we hold that *Young* applies retroactively to those cases in which the trial or the appeal was still pending at the time *Young* was decided. We further hold that Monica and Mitchell cannot be subjected to an enhanced sentence unless they are resentenced to life imprisonment without the possibility of parole after a jury finds that the murder was especially heinous, atrocious, or cruel according to the standards announced in *Young.*

■ Finally, in order to provide guidance to the court on remand, we now clarify the procedures for the HRS § 706–657 hearing,

8

which we described in *State v. Janto*, 92 Hawai'i 19, 986 P.2d 306 (1999). The jury's finding that the murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity" must be unanimous. *Id.* at 35, 986 P.2d at 322. We now clarify that the jury's finding that murder was *not* "especially heinous, atrocious, or cruel, manifesting exceptional depravity" must be unanimous as well. Where the jury is unable to reach a unanimous decision, the trial court may declare a mistrial and empanel a new jury for a new sentencing hearing.[5]

### III. CONCLUSION

Based on the foregoing, we affirm Monica's and Mitchell's convictions of and extended sentences for the kidnapping count. We vacate their enhanced sentences for the second degree murder count and remand the cases for resentencing. The prosecution may elect to conduct a new HRS § 706–657 hearing or may consent to resentencing without the enhancement. *Cf. Garringer v. State*, 80 Hawai'i 327, 334–35, 909 P.2d 1142, 1149–50 (1996).

---

**5.** For examples of bifurcated adjudicative and penalty proceedings where the court may order a rehearing after a mistrial in the penalty proceeding, *see, e.g.*, Ala.Code § 13A–5–46(f), (g) (1994), Cal.Penal Code § 190.4(a) (West 1999), Or.Rev. Stat. § 163 .150(5)(b)(B) (1999), Wash. Rev.Code Ann. § 10.95.050(4) (West 1990).