(No. 36281.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HORACE MULLINS, Plaintiff in Error.

*Opinion filed September 27, 1963.*

WILLIAM E. MAIER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Horace Mullins, was indicted jointly with Clifford Cook and Lee Andrew Gray for the crime of murder. At their arraignment all three pleaded not guilty. Immediately before the trial commenced, Gray changed his plea to guilty. A jury was waived, and in the course of the trial, after his statement to the police had been ruled

admissible, Cook also changed his plea to guilty. The trial continued as to the defendant and he was found guilty and sentenced to the penitentiary for a term of fifty years.

On this writ of error, defendant contends that he was not proved guilty beyond a reasonable doubt, and that he "was convicted erroneously on a conspiracy doctrine."

The decedent, Agnes Smith, was last seen alive about six o'clock on the evening of October 17, 1959. Several witnesses testified that they heard a scream from the vicinity of her apartment about seven o'clock that evening. The following morning her body was found on the floor in her apartment. The cause of her death was determined to be manual strangulation. Two lacerations were found on her scalp. When her body was discovered, her apartment was found to be in a state of disarray—papers and clothes were scattered throughout, and the dresser drawers in her room were open. A hammer with red stains was found on a dresser.

Cook testified that he met Gray and the defendant in front of the apartment building in which both the decedent and Cook lived at about 5:30 P.M. on October 17. There was a conversation about Cook's use of Gray's automobile, after which Gray and the defendant entered the building. Cook stopped to lock the door of the automobile, and entered the building "about 25 or 50 feet" behind the defendant and Gray. He testified that he heard a scream before entering the building but saw nothing when he walked past decedent's apartment on the first floor on his way to his own apartment on the second floor. He stated that he remained in his second-floor apartment about ten minutes and at no time did he see the defendant or Gray in the building. He then walked to Gray's apartment, which was in the same block. As he entered Gray's apartment, the defendant handed him some money, and said: "Keep your mouth shut." Cook replied, "Give me some more," and the defendant did so.

Gray testified that on the morning of October 17 the defendant told him that he intended to rob Agnes Smith. Gray replied, "It is okay." A "little after six" that evening, Gray and the defendant met Cook in front of the building in which decedent lived. After a brief conversation, defendant and Gray entered the building. Gray saw the defendant ring decedent's door bell, saw her come to the door, and heard the defendant talking to her, but did not hear what was said. Gray went immediately to the second floor to Cook's apartment. The record does not indicate how long Gray remained there, but as he was coming back down the stairs, he heard the decedent scream two or three times. He then saw defendant strike her "two or three times" with a coke bottle. While Gray stood looking on, defendant put a handkerchief in the decedent's mouth and strangled her. Gray then helped the defendant carry her body into the apartment. He further testified that the struggle took place in the hall outside decedent's apartment, and that during and after the struggle the door to the apartment was left open. He remained "looking out * * * for two or three minutes" and then left. The door of the apartment remained open.

Grace Cook, the mother of Clifford Cook and the mother-in-law of Lee Andrew Gray, testified that as she was coming from the second-floor apartment of her son, between 6:15 and 6:45 on the evening in question, she saw the defendant and Gray coming up the outside steps. Gray came into the building and she talked briefly with him, while the defendant went back down the steps. She passed the defendant outside the building.

Gray's testimony, if believed, was sufficient to establish the defendant's guilt. The uncorroborated testimony of an accomplice, if it convinces the trier of the fact beyond a reasonable doubt, is sufficient to sustain a conviction. (*People* v. *Nitti,* 8 Ill.2d 136; *People* v. *Alexander,* 21 Ill.2d 347.) The testimony of Gray is corroborated by that of

Cook, and the testimony of Mrs. Cook placed the defendant at the scene of the crime at about the time that it was committed.

The defendant argues that the testimony of Gray and of Cook must be disregarded because they testified against him in order to obtain lenient sentences. There is no positive statement in this record that the testimony of Gray or Cook was induced by promises or expectation of leniency, (cf. *People* v. *Nitti*, 8 Ill.2d 136,) and any such conclusion must rest on inferences. The fact alone that an accomplice has been promised leniency does not necessarily require that his testimony be disregarded, (*People* v. *Williams*, 17 Ill.2d 193, 199-200,) although it must be considered in determining his credibility and the weight to be given to his testimony. Although the testimony of an accomplice must be scrutinized with extreme care and acted upon with the utmost caution, a conviction based upon it "should not be set aside unless it is plainly apparent to the reviewing court that the defendant was not proved guilty beyond a reasonable doubt." *People* v. *Nitti*, 8 Ill.2d at 139.

There are numerous inconsistencies in the testimony of the two accomplices and Grace Cook. Cook testified that he entered the building only 25 or 50 feet behind Gray and the defendant, and that he went directly to his apartment on the second floor. Gray also testified that he had gone directly to Cook's aparment. Yet Cook testified that he did not see Gray inside the apartment building. Gray was not asked whether he had seen Cook inside the building. Cook also testified that he did not see the defendant or the decedent inside the building. Yet his apartment was on the second floor of the same building, and in order to get to it he must have passed decedent's apartment. Gray testified that Mullins was talking to decedent in the hallway when he went up the stairs and that when he came down Mullins was struggling with the decedent, still in the hallway.

Cook heard a scream before he entered the building 25 or 50 feet behind the defendant and Gray. Yet Gray heard the scream after he had already gone up to the second floor and was on his way back down. Cook should have seen his mother, Grace Cook, if the occurrence to which she testified took place about the time the crime was committed. Yet neither he nor she testified to having seen one another. Gray should have seen Grace Cook. She testified that she talked with him inside the building. He does not mention having seen her. Gray testified that he saw Mullins strike the decedent on the head with a coke bottle. No bottle was ever found, but the police found a "red-stained" hammer.

In addition to these contradictions and unresolved discrepancies, Gray was impeached by prior contradictory statements. At the trial, Gray denied that he and Cook had planned the robbery two or three months earlier. By way of impeachment, it was established that he had testified under oath at the coroner's inquest into the death of Agnes Smith that he and Cook had discussed robbing her, about three months before the murder, in Cook's apartment at a time when Cook's wife was present and Cook's mother, Grace Cook, "kept coming in back and forth." The defendant was not present. At the trial Gray denied that he had a conversation with the defendant's attorney in which he allegedly said that his statement to the police concerning the crime was not true. The attorney for the defendant testified in detail at the trial concerning this conversation. At the trial Cook testified that he was outside the building when he first heard a scream and that when he entered the building he saw neither Gray nor the defendant. In his statement to the police he said that he saw the defendant strike her on the head with a bottle.

Some of the apparent contradictions and unresolved discrepancies in the record appear to be due to the efforts of Gray and Cook to minimize the extent of their own

participation in the crime. Others may be accounted for by lack of precise observations as to the time of the occurrences testified to, or by the physical arrangement of the interior of the apartment building. We have examined the record with the utmost care, and we are unable to say that the trial judge, who saw and heard the witnesses, erred in concluding that the defendant's guilt was established beyond a reasonable doubt.

The defendant also contends that he was erroneously convicted on a conspiracy doctrine. He maintains that his conviction rests solely on his association with Gray and Cook in the commission of a crime of larceny and insists that there is no sufficient evidence of assent on his part to the commission of the murder to warrant his conviction for that crime. This argument ignores the realities of the situation. The defendant's assent to the murder of Agnes Smith is not established by inference or circumstantial evidence, but by direct testimony that he killed Agnes Smith.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*