STATE OF HAWAII, Plaintiff-Appellee, *v.* DELBERT
KAAHANUI WAKINEKONA, Defendant-Appellant

No. 5068

*and*

STATE OF HAWAII, Plaintiff-Appellee, *v.* WARREN
KALANI KAAHANUI, et al., Defendants-Appellants

No. 5072

July 19, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON and KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

On June 27, 1970 appellants Kaahanui and Wakinekona and one Harold A. Kalani visited the XYZ Market operated by Masaharu Obara and his brother Wataru. Kaahanui and Wakinekona entered the store, ostensibly to purchase "sashimi"; once inside, appellants beat and robbed the Obaras. As 'a result of the beating, Masaharu Obara died. Kaahanui, Wakinekona and Kalani were indicted for the crimes of first degree murder, first degree robbery (two counts) and aggravated assault. The cases were tried separately but have been consolidated for the purpose of argument on appeal We consider, in turn, the contentions raised by appellant Wakinekona and appellant Kaahanui.

### I. APPELLANT WAKINEKONA

Appellant Wakinekona was the first to be tried. On November 10, 1970 he was found guilty on all counts. On appeal he raises several issues concerning the use of testimony of co-defendant Kalani who later pleaded guilty to second degree robbery and the question of the applicability of our recent ruling in State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971) to his decision to decline to take the witness stand.

Appellant Wakinekona asser<sup>+</sup> that he was entitled to

an *in camera* hearing as to the voluntariness of Kalani's testimony to be adduced. Appellant's theory is that Kalani's oral testimony would amount to a confession to all crimes charged in the indictment and could not be admitted against appellant without an *in camera* showing of voluntariness.

The argument that HRS § 621-26 requires such a hearing is without merit. HRS § 621-26 provides that "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made . . . ." The above language applies only to the extra-judicial statements of the defendant who is on trial.

The argument that the rudimentary requirements of due process of law dictate that an *in camera* hearing be held requires some discussion. The requirements of due process prevent the state's use of an accused's extra-judicial admissions of guilt where such admissions are the product of coercion[1]. *Blackburn v. Alabama,* 361 U.S. 199 (1960); *Spano v. New York,* 360 U.S. 315 (1959); *Chambers v. Florida,* 309 U.S. 227 (1940). The basic considerations which require the exclusion of confessions obtained through force or coercion are the inherent untrustworthiness of involuntary confessions, a desire that criminal proceedings be accusatorial rather than inquisitorial and a desire that the police not become law breakers in the process of achieving society's valid law enforcement objectives. While there is dicta to the contrary,[2] the standard of due process of law does not

---

[1]Whether coerced or not, the extra-judicial statements of co-defendants made subsequent to the commission of the crime are hearsay and therefore inadmissible except as against the person making the statement. State v. Hashimoto, 46 Haw. 183, 377 P.2d 728 (1962); Territory v. Kitabayashi, 41 Haw. 428 (1956); The King v. Marks, 1 Haw. 81 (1851).

[2]In Bram v. United States, 168 U.S. 532 (1897), involving the coerced testimony of a seaman, the Court at 542-43 discussed the applicable law:

In 3 Russell on Crimes (6th ed.) 478, it is stated as follows:

But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight* . . . (emphasis supplied).

require that pleas of guilty be free of inducements resulting from negotiation with the state. *Lupo v. United States,* 435 F.2d 519 (8th Cir. 1970); *Ford v. United States,* 418 F.2d 855 (8th Cir. 1969); *Brown v. Beto,* 377 F.2d 950 (5th Cir. 1967); *Shelton v. United States,* 242 F.2d 101, *rev'd on rehearing en banc,* 246 F.2d 571 (5th Cir. 1957), *rev'd on confession of error,* 356 U.S. 26 (1958).

The facts of the instant case do not support appellant's theory that Kalani's testimony was involuntary. There was no showing that the state had wrung the testimony from Kalani's lips by means of unduly harsh physical or psychological methods. The theory advanced is that Kalani's testimony must be considered involuntary as a matter of law because his testimony on cross-examination was that one of the inducements to testify was that the prosecutor "might" try to help him out. We do not think that such an inducement rendered Kalani's testimony inadmissible. *People v. Mullins,* 28 Ill.2d 412, 192 N.E.2d 840, *cert. denied,* 376 U.S. 924 (1964). The fact that there had been a negotiation with the state which resulted in some inducement to testify went to the weight, rather than to the admissibility of the testimony. *Caton v. United States,* 407 F.2d 367 (8th Cir. 1969), *cert. denied,* 395 U.S. 984 (1969); *Peel v. United States,* 316 F.2d 907 (5th Cir. 1963), *cert. denied,* 375 U.S. 896 (1963); *United States v. Agueci,* 310 F.2d 817 (2d Cir. 1962), *cert. denied,* 372 U.S. 959 (1963). Positive inducement running from prosecutor to defendant does not render a guilty plea

---

In Brady v. United States, 397 U.S. 742 (1970), *Bram, supra,* was said still to be good law. The Court, by implication, overruled the underscored dicta in *Bram, supra,* when it suggested, at 751, that there should be no valid objection to accepting the plea of

> . . . the defendant who is permitted by prosecutor and judge to plead guilty to a lesser offense included in the offense charged; and . . . the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped.

Due process seemed to require only that the prosecutor keep his bargain, Santobello v. New York, 404 U.S. 257 (1971), and that the prosecutor not use his position to unfairly induce the plea. *See* Machibroda v. United States, 368 U.S. 487 (1962); Shelton v. United States, 242 F.2d 101, *rev'd on rehearing en banc,* 246 F.2d 571 (5th Cir. 1957), *rev'd on confession of error,* 356 U.S. 26 (1958); American Bar Association, *Standards Relating to Pleas of Guilty* (1968).

unacceptable, nor should it render a co-defendant's confession unacceptable. As to appellant's claim that there should have been an *in camera* hearing on the voluntariness of Kalani's confession, examination of the record reveals there was in fact such a hearing.

Appellant Wakinekona asserts that the state's use of the testimony of Kalani amounted to a knowing use of perjured testimony in violation of Wakinekona's basic right to a fair trial. In *Napue v. Illinois,* 360 U.S. 264 (1959), cited by appellants, the evidence of perjury by the state's witness came directly from one Webb, who, as an assistant state's attorney, had prosecuted Napue's case. Here, on direct examination Kalani testified that he had been promised nothing in return for his testimony; later, on cross-examination, Kalani stated that while nothing had been promised, the prosecution had indicated that he "might get a lesser charge." It further appears that Kalani subsequently pleaded and was found in accordance with his plea, guilty of second degree robbery. We are not drawn to the conclusion that the use of the testimony of Kalani amounted to the knowing use of perjured testimony by the state.

Appellant Wakinekona contends that he has been denied the equal protection of the laws because a suggestion of prosecutorial leniency in return for testimony was made to Kalani but not to him. This argument must fall inasmuch as the prosecutor is entitled to exercise such discretion in the interests of justice.

Asserting that his decision not to take the witness stand was based upon fear that the prosecution would introduce evidence of prior convictions, appellant Wakinekona argues, on the authority of *State v. Santiago, supra,* 53 Haw. 254, 492 P.2d 657 (1971), that he was denied due process of law. We do not agree. Our decision in *Santiago, supra,* does not constitute authority for a direct appeal on that point, since appellant did nothing to call the point to the attention of the trial court, thereby advising the court of the question presented and affording the court an opportunity to consider the matter and make a correction if necessary. See *S & W Crane Serv. Inc. v. Dependents of Berard,* 53 Haw. 161, 489

P.2d 419 (1971).

## II. APPELLANT KAAHANUI

Appellant Kaahanui makes four assignments of error. The first is based upon the failure of the court to grant a continuance or, in the alternative, a change of venue due to unfavorable pre-trial publicity. Kaahanui's trial commenced on November 12, 1970, two days after the verdict in the Wakinekona trial. It is asserted that the trial judge took insufficient steps to shield the defendant from the prejudicial effect of the publicity attending the robbery and murder at the XYZ Market and the publicity attending the trial of Wakinekona. We find little merit in the contention that the series of newspaper articles running from June 28, 1970 to July 31, 1970 prejudiced Kaahanui's right to a fair trial. We do believe, however, that the series of newspaper articles commencing with the November 6, 1970 account of the selection of the jury in the trial of Wakinekona created an atmosphere endangering defendant Kaahanui's right to a fair trial. But the issue is not whether the newspaper accounts were in and of themselves inflammatory but whether the trial judge took sufficient steps to shield the proceedings from the prejudicial effect of the publicity. We think that he did. Our decision is based upon several factors. First, we do not think that the amount of publicity attending the trial of Wakinekona was sufficiently voluminous to lead the trial judge to reasonably conclude that there was a probability that Kaahanui would not be able to receive a fair trial. Second, the newspaper articles contained generally factual accounts of witness testimony and there was no reporting, as in *Sheppard v. Maxwell,* 384 U.S. 333 (1966), of matters which could not be admitted in evidence.[3] Third, although

---

[3]In Sheppard v. Maxwell, *supra,* the Court condemned the publication of such matters as the defendant's refusal to take a lie detector test, the story that defendant's wife [the murder victim] had attributed a "Doctor Jekyll-Mr. Hyde" personality to defendant and the report of a witness who would testify as to the "fiery temper" of defendant.

the trial judge did not do all possible[4] to negate the effect of the pre-trial publicity on the jurors, we think that the *voir dire* of prospective jurors was sufficient.[5]

We briefly consider appellant Kaahanui's final three points. We do not think that appellant was entitled to object to the granting of co-defendant Kalani's motion for severance. We agree with Judge Learned Hand's statement that "No accused person has any recognizable legal interest in being tried with another, accused with him, though he often has an interest in not being so tried . . . ." *United States v. Bronson,* 145 F.2d 939, 943 (2d Cir. 1944).

Appellant Kaahanui argues that the trial court's denial of his motion to dismiss the indictment constituted error. Appellant's theory is that since co-defendant Kalani did not decide to cooperate with the prosecution until after indictments were returned, the indictments must have been based upon legally inadmissible evidence. Appellant's theory, however, does not negate the possibility that the state adduced other competent evidence before the grand jury. In the absence of a transcript of the proceedings of the grand jury, to which appellant was entitled, see *McMahon v. Prosecuting Attorney,* 51 Haw. 589, 465 P.2d 549 (1970), we decline to consider appellant's assignment of error to the trial court's refusal to dismiss the indictment.

We reject appellant Kaahanui's contention that it was error to instruct the jury in accordance with HRS § 748-1 (3), the so-called felony-murder rule, which provides:

> Murder in the first degree is the killing of any human being without authority, justification, or extenuation by

[4]*See generally,* American Bar Association, *"Standards Relating to Fair Trial and Free Press"* (1968).

[5]The extensive *voir dire* was at least in part prompted by the oral motion for continuance or change of venue. Although the trial judge did not allow questioning of each prospective juror out of the presence of the others, the record of the *voir dire* hearing indicates, we think, that the jury selected was one which could consider the case with impartiality.

law done:

.   .   .   .   .

    (3) In the commission of or attempt to commit
. . . arson, rape, robbery, burglary, or kidnapping.

It is true that a conviction under HRS § 748-1(3) could be based upon the taking of human life by accident or inadvertence, while the remaining subsections of HRS § 748-1 contemplate a conviction based upon the taking of human life by intentional conduct. We do not doubt, however, that the legislature may rationally conclude that one who accidentally takes a human life in the commission of a felony enumerated in HRS § 748-1(3) is as morally culpable as one who takes human life by design.

The convictions are affirmed.

*George K. Noguchi* for appellant Wakinekona.

*James G. Jung, Jr.,* Deputy Public Defender for appellant Kaahanui.

*Erick T. S. Moon,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the briefs) and

*Franklin K. Mukai,* Deputy Prosecuting Attorney, for appellee.