STATE OF HAWAII, Plaintiff-Appellee, *v*. KAILUA AUTO WRECKERS, INC.; HELEN WEBER as President-Treasurer and Director and Individually; HERBERT R. WEBER aka ROY WEBER, as Vice-President-Secretary and Director and Individually; and ROY JOAQUIN, a Director, and Individually, Defendants-Appellants

NO. 6598

JULY 10, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
AND RETIRED JUSTICES MARUMOTO AND
KOBAYASHI, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendants-appellants, Kailua Auto Wreckers, Inc., H. Roy Weber and Helen Weber, appeal a conviction for openly burning automobiles on seventeen different occasions in violation of State Public Health Regulation (hereinafter PHR) Chapter 43, Air Pollution Control, Section 7, Control of Open Burning.[1] We affirm.

All seventeen of the cited violations took place in 1976. At the time, appellant Kailua Auto Wreckers, Inc. (hereinafter KAW) was in the business of processing used cars for scrap metal; the cars were burned to rid them of non-metallic material, compressed into cubes called bales and sold to local scrap dealers. In 1976, appellant H. Roy Weber, was vice-president-general manager-secretary-director of KAW and

---

[1] PHR Ch. 43, Sec. 7(a) states, in relevant part, "no person shall ignite, cause to be ignited, permit to be ignited or maintain any open fire." PHR Ch. 43, Sec. 1(r) defines "person" as "any individual, corporation . . . or any legal successor, representative, agent or agency of the foregoing."

was principally involved in managing the company. His wife, appellant Helen Weber, held the position of president-treasurer-director of KAW but did not actively participate in business operations. The couple were at the time the only directors, officers and employees of the closely held corporation.

For the period beginning March 12, 1974 through July 31, 1975, KAW had a variance from the air pollution regulation; an extension was applied for and denied on October 9, 1975. Thereafter, KAW engaged in open burning in violation of PHR Ch. 43, Sec. 7. Despite repeated oral and written warnings, the violations continued.

The uncontradicted evidence at trial, based on photographs as well as testimony by environmental health specialist Bruce Tillman and Katherine Hendricks and citizens Jerry Goodman and Dr. David Rodwell overwhelmingly established that the cited incidents did take place and that the violations were flagrant and continuous. Moreover, appellant Roy Weber confirmed the occurrence of these violations by admitting at trial that he openly burned automobiles in 1976 and that, during the period from 1969 through 1976, KAW openly burned a total of approximately 10,000 to 15,000 cars. He further admitted that in 1977 KAW still had not completed its air pollution emission control device.

The appellants' defense at trial was that the Department of Health had discriminatorily enforced the open burning ban against KAW, singling it out from among the large number of automobile open burners contemporaneously violating the regulation and thereby denying appellants equal protection of the law.

Initially, appellants KAW, H. Roy Weber and Helen Weber were charged for each of the seventeen violations under PHR Ch. 43, Sec. 7 and HRS § 342-23, a general prohibition against air pollution without a written permit from the director of health. At the close of trial, the lower court concluded that the violations had been established beyond any doubt and that the defense of discriminatory enforcement was not well-founded. Given that each incident originally entailed two counts, the trial judge struck the counts under

the statute and found the appellants guilty severally and individually of violating PHR Ch. 43, Sec. 7. With respect to the first eight incidents referred to in the complaint; the lower court imposed a fine of $2,000 for each violation comprising a total fine of $16,000.[2] With respect to the remaining nine incidents, the trial judge suspended imposition of sentence on the condition that there be no further violations for six months.

Two issues raised on this appeal warrant our consideration:

    1. Whether the Department of Health in 1976 enforced the open burning ban in a discriminatory manner against KAW violating the equal protection guarantee of the Fourteenth Amendment of the United States Constitution and Article I, Section 5 of the Hawaii Constitution.

    2. Whether the corporate officers of KAW may be held personally liable for the corporation's repeated violations of PHR Ch. 43, Sec. 7.

We have considered the other issues raised by the appellants and find them to be without merit.

I.   THE DEFENSE OF DISCRIMINATORY ENFORCEMENT OF PHR CH. 43, SEC. 7.

Appellants contend that the Department of Health's selective enforcement of PHR Ch. 43, Sec. 7 unconstitutionally discriminated against KAW mandating reversal of the convictions below. Although this Court has never explicitly recognized discriminatory penal law enforcement as a defense in a criminal proceeding,[3] the United States Supreme

---

[2] Violations of PHR Ch. 43, Sec. 7 are punishable by a maximum fine of $10,000 per offense under HRS § 342-11(b).

[3] Two Hawaii Supreme Court cases discuss discriminatory administration of the law in other contexts. *See* Baldeviso v. Thompson, 54 Haw. 125, 504 P.2d 1217 (1972) (welfare applications); In re Hawaiian Land Co., 53 Haw. 45, 487 P.2d 1070 (1971) (tax assessment).

Court has established that the discriminatory enforcement of a criminal law is unconstitutional and may be raised as a defense by a person so subjected. In *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582 (1961), petitioners alleged that the prosecutor had invidiously singled them out as his exclusive target and sought to enjoin his enforcement of Pennsylvania's Sunday closing laws. Injunctive relief was deemed properly denied by the United States Supreme Court; it reasoned that petitioners could adequately defend against any such proceeding at trial on the basis of unconstitutional discrimination. *Id.* at 588. The Court's holding thus assumed that the defense of discriminatory enforcement was available to a defendant in a criminal action. The availability of the defense was again implied by the Court in *Oyler v. Boles*, 368 U.S. 448 (1962). The petitioners' claim in *Oyler* was that West Virginia's habitual criminal statute had been discriminatorily administered in violation of their right to equal protection of the law. In rejecting petitioners' claim, the Court elaborated on the scope of the defense.

> [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. Therefore, grounds supporting a finding of a denial of equal protection were not alleged. *Oregon v. Hicks*, 213 Ore. 619, 325 P.2d 794 (1958); cf. *Snowden v. Hughes*, 321 U.S. 1 (1944); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) (by implication).

368 U.S. at 456. The clear implication of the above opinions is that discriminatory enforcement does constitute a valid defense in criminal proceedings. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (constitutional limits on prosecutorial discretion acknowledged in determining whether prosecutor's conduct violated defendant's due process rights).

The burden of proving discriminatory enforcement of the law rests upon the party raising the defense. *United States v. Torquato*, 602 F.2d 564, 569 (3rd Cir. 1979). That party must

present sufficient evidence to establish the existence of intentional or purposeful discrimination, *Snowden v. Hughes*, 321 U.S. 1 (1944),[4] that is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Oyler v. Boles*, 368 U.S. at 456. It is insufficient to show merely that other offenders have not been prosecuted, *Moss v. Hornig*, 314 F.2d 89, 92 (2nd Cir. 1963); or that there has been laxity of enforcement, *People v. Utica Daw's Drug Company*, 16 App.Div.2d 12, 225 N.Y.S.2d 128, 131 (1962); or that there has been some conscious selectivity in prosecution. *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir. 1978). Recognition of the defense will not permit the guilty to go free simply by showing that other violators exist. However, where a defendant proves that there is no legitimate basis for a law's selective enforcement, the prosecutor's conduct will be subjected to the court's scrutiny.[5]

We recognize that important societal interests are served by providing defendants with such a defense. Because there are few effective limits on the power of the police or prosecutor to ignore a violation of the criminal law, these officials have the power to enforce the law selectively — to prosecute some and not to prosecute others, when all have engaged in conduct similarly prohibited by a given criminal law and when all have an equal chance of being convicted. Abuse of this prosecutorial power to harass unpopular political groups or otherwise to intimidate persons unjustly presents a serious

---

[4] In Snowden v. Hughes, 321 U.S. 1 (1944), cited in the *Oyler* decision, the Court stated:

The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection, unless there is shown to be present in it *an element of intentional or purposeful discrimination*.

*Id.* at 8 (emphasis added). *See also* Mackay Telegraph & Cable Co. v. City of Little Rock, 250 U.S. 94, 100 (1919); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 353 (1918).

[5] In State v. Wakinekona, 53 Haw. 574, 499 P.2d 678 (1972), we noted that prosecutorial leniency offered to one defendant in return for testimony necessary to convict another lay within a prosecutor's legitimate scope of discretion.

danger to society. The defense of discriminatory enforcement is the only means provided defendants to ensure that enforcement of the criminal law is not premised upon bias, prejudice or other improper influences. Our courts, as an agency of government, should not lend itself to a prosecution which would violate a defendant's constitutional rights. We therefore hold that if a defendant sustains the burden of establishing intentional or purposeful discrimination based upon an unjustifiable standard, that defendant is entitled to dismissal of prosecution as a matter of law under the equal protection clause of both the Federal and State Constitutions.

Turning to the facts of the case at hand, however, we find that appellants have woefully failed to carry their burden of proof. The evidence simply does not support a finding that the Department of Health purposefully discriminated against the appellants based upon an unjustifiable standard. Although appellants claim that PHR Ch. 43, Sec. 7 was enforced only against KAW from 1973 through 1976, the record indicates that formal administrative enforcement proceedings were commenced against four other automobile open burners in 1976, the year in which KAW was charged.[6] In addition, during the relevant period, the Department of Health filed suit against Leeward Auto Wreckers and Grace Enterprises, major competitors of KAW. As a result of the Department's enforcement actions, Leeward Auto Wreckers developed an incinerator to control air pollution emissions that complied with the Department's requirements and Grace Enterprises was forced out of business. Of the three large-scale auto wrecking operations, KAW alone continued to burn openly without any attempt to conform with the air pollution regulation. Thus, at the threshold, appellants fail to present a distinct pattern of selective enforcement.

---

[6] *See* Department of Health v. Nick Gega, dba Pearl City Towing and Auto Wrecking, Docket No. EO-A-10 (State Exhibit R); Department of Health v. Gulston Crawford, Docket No. EO-A-16 (State Exhibit S); Department of Health v. Charles Hook, Docket No. EO-A-18 (State Exhibit T); Department of Health v. John Tandal, dba L & T Auto Wreckers, Docket No. EO-A-20 (State Exhibit U). These actions were all instituted in 1976.

Similarly, their attempt to demonstrate intentional or purposeful discrimination is unsuccessful. Appellants argue that the Department of Health knowingly ignored instances of unlawful open burning and did not actively seek out violators despite the ease with which they could be discovered. These contentions were effectively rebutted by evidence introduced by the State that the Department had enforced the open burning prohibition against other open burners and that the methods of uncovering violators suggested by the appellants either had been employed[7] or entailed difficulties of proof that significantly reduced their utility.[8]

Lastly, the appellants have failed to show that the Department of Health based its decision to prosecute KAW on an arbitrary or unjustifiable standard. There is no evidence in the record of racial, sexual, political or other improper discrimination. The appellants imply persecution but we find such charges unfounded in light of the leniency extended to KAW by the Department of Health. The first open burning violation in 1976 was reprimanded with just a warning letter; prosecution followed only after the warning was ignored. Moreover, we find the Department's prosecution of KAW completely consistent with its enforcement policy of respond-

---

[7] Appellants criticize the Department's failure to enlist the aid of fire departments in enforcing the open burning prohibition. Mr. Kazuo Shishido, an environmental health specialist employed by the Department of Health, testified, however, that the Department did meet with representatives from both the fire department and the police department to explain Hawaii's air pollution regulations and to instruct them specifically on how they could be of assistance in enforcing the open burning ban.

[8] Appellants maintain that by contacting Flynn-Learner Inc., the major local purchaser of scrap metal, the Department of Health could have discovered exactly who was engaged in the open burning of cars and in what quantity. The State points out that appellants' claim ignores the gap between identifying a deliverer of burnt cars and identifying who was actually involved in the illegal act of open burning. The usefulness of the information available from Flynn-Learner is further reduced by the fact that the receiving weightmaster for Flynn-Learner testified that, where scrap metal is delivered in bales, he could not tell whether the scrap had been burned or even whether it came from cars. KAW delivered scrap metal in precisely those types of bales.

ing to citizens' complaints. In 1976. the Department of Health received approximately forty complaints of open burning: one-half of these complaints had been provoked by KAW's unlawful activities, the largest number attributed that year to any single source. In this sense, KAW was in a class by itself. We therefore find no error by the trial court in refusing to dismiss the charges against appellants on the ground of discriminatory enforcement.

## II. THE PERSONAL LIABILITY OF KAW'S CORPORATE OFFICERS.

The evidence at trial overwhelmingly established that KAW violated PHR Ch. 43, Sec. 7 on seventeen different occasions in 1976. The corporation KAW is, however, merely an artificial entity and can only act through the individuals who act on its behalf. In 1976, the only agents of the closely held corporation were appellants H. Roy Weber and his wife, Helen Weber; both were held individually liable by the court below for KAW's violations. Appellants contend that the trial court's imposition of individual liability was in error because the evidence failed to establish Mr. and Mrs. Weber's participation in the corporation's unlawful acts.

It is undisputed that a corporate officer may be held individually liable for a corporate penal law violation where he performs or causes the performance of the illegal act. Hawaii Penal Code § 702-228, "Liability of persons acting, or under a duty to act, in behalf of corporations or unincorporated associations," subsection (1), states in pertinent part:

> A person is legally accountable for any conduct he performs or causes to be performed in the name of a corporation or an unincorporated association or in its behalf to the same extent as if it were performed in his own name or behalf.

In 1976, the year in which KAW was charged. H. Roy Weber held the positions of vice-president, secretary and general manager of KAW. He alone determined company policy and was principally involved in carrying on the business' day-to-day operations. Mr. Weber testified at trial that he was aware

of the State's air pollution laws from 1974 through 1977 and that he had dealt with Department of Health officials concerning KAW's smoke pollution since 1968. In spite of this awareness, Mr. Weber admitted that he openly burned up to fifteen thousand automobiles between 1969 and 1976[9] and specifically admitted openly burning cars in the year in which KAW was cited. Consistent with these admissions, testimony at trial placed Roy Weber at the scene of one of the seventeen alleged violations. In view of these facts, the trial court imposed individual liability upon H. Roy Weber for KAW's infractions of PHR Ch. 43, Sec. 7. Given Mr. Weber's admissions of open burning and his central role in directing the corporate business, we find well-justified the trial court's inference that appellant did perform or, at least, authorized the performance of, the corporation's unlawful acts. The imposition of individual liability upon Mr. Weber is thus without error.

The trial court also held Mrs. Weber personally liable for KAW's violations of the open burning regulation but on different grounds. Her liability was premised on the fact that in 1976 she was both president and treasurer of KAW and therefore held a "significant position" in the corporation at the time the violations occurred. The record reveals that in spite of her high corporate position, however, Mrs. Weber did not take an active part in the business, never issued orders on business operations and never set company policy. Her only participation in the business was to run a few errands now and then and occasionally to attend the corporation's annual directors' meeting. Mrs. Weber testified at trial that she was and always has been just a housewife.[10] The appellants argue

---

[9] We note that PHR Ch. 43, Sec. 7 did not go into effect until 1972. KAW's open burning activity prior to the effective date of the regulation is described herein only to portray the extensiveness of this corporate practice.

[10] The appellants contend that "a mere housewife cannot be convicted of the charges" disputed here. Contrary to appellants' assertion, however, corporate officers are not free from personal liability where they serve in those capacities only

that without evidence proving that Mrs. Weber either performed or authorized the performance of KAW's illegal open burning, she may not be held personally liable. We concur with appellants' contention only to the extent of agreeing that HPC § 702-228(1) is inapplicable to justify the imposition of individual liability with respect to Mrs. Weber.[11] Whether Mrs. Weber, as president and treasurer of KAW, may nevertheless be held personally liable for the corporation's violations of PHR Ch. 43, Sec. 7 under some other statute or common law rule is the question that remains. We believe she may.

Critical in our determination is the fact that the instant case involves corporate violations of a police regulation intended to protect the public from the harmful effects of air pollution. Where corporate violations of public health regulations are involved, the United States Supreme Court and courts in other jurisdictions have held corporate officers personally liable irrespective of whether such officers performed or authorized the performance of the unlawful acts. *See*

---

as an "accommodation" and do not participate actively in the corporation's affairs. A person cannot divorce the responsibilities of a corporate position from the statutory and common law duties it carries with it by accepting the position merely as an accommodation. Minton v. Cavaney, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961); 2 O'Neal, Close Corporations § 8.04 n. 11; *see generally* Note, Corporations: Use of Accommodation Incorporators, Directors, Officers: Potential Liability of Accommodation Personnel, 47 Cornell L.Q. 443 (1962).

[11] Appellee argues that HPC § 702-228(2) permits the imposition of personal liability upon Mrs. Weber. We disagree. HPC § 702-228(2) states in relevant part as follows:

Whenever a duty to act is imposed by law upon a corporation . . ., any agent of the corporation . . . having primary responsibility for the discharge of the duty is legally accountable for a reckless omission to perform the required act to the same extent as if the duty were imposed by law directly upon himself.

Thus, under HPC § 702-228(2), if an affirmative duty to act is imposed by statute upon a corporation, the responsible corporate officers may be held personally liable for their reckless failure to perform such act. In the instant case, however, PHR Ch. 43, Sec. 7 does not explicitly impose an affirmative duty to act upon corporations. The regulation is phrased in terms of a ban against open burning, *i.e.*, in terms of a prohibition against acting in a specific manner. Given this distinction, we do not find HPC § 702-228(2) dispositive of the question before us.

*United States v. Park,* 421 U.S. 658 (1975); *United States v. Dotterweich,* 320 U.S. 277 (1943); *State v. Burnam,* 71 Wash. 199, 128 P. 218 (1912); *Overland Cotton Mill Company v. People,* 32 Colo. 263, 75 P. 924 (1904). In each of the cited cases, the respective statutes violated placed no explicit duties upon corporate officers. Notwithstanding this fact, in both *Park* and *Dotterweich,* corporate presidents who had not actively participated in the perpetuation of their corporations' illegal acts were nevertheless held personally accountable for the corporations' violations of the Federal Food, Drug and Cosmetic Act. Similarly, in *Burnam,* the secretary-treasurer-manager of a dairy company was held personally liable for corporate violations of a regulation prohibiting the sale of milk below a standard grade even though he had instructed his servants to comply with the standard and was unaware that the violations had occurred. Lastly, in *Overland,* the company's superintendent was held responsible for the employment of a child below the statutorily set minimum age although his actual participation in the unlawful hiring had not been established; the Court examined the duties and authority of his corporate position and found that by exercise of due diligence he should have known of the prohibited employment and had failed to prevent it.

In each of the above cases, the officers' liability was based upon the recognized principle that a corporate agent, through whose act, default or omission the corporation committed a crime, was himself guilty individually of that crime. The principle was held to apply not only to those corporate agents who themselves committed the criminal act but also to those who by virtue of their managerial positions or other similar relation to the actor could be deemed responsible for its commission.

A detailed discussion of the most recent of these cases, *United States v. Park, supra,* is helpful in resolving the question before us. As stated earlier, in that case a large national food store chain violated § 301(k) of the Federal Food, Drug and Cosmetic Act. The president of the corporation had not authorized the violations and the pertinent statutory provision

234

placed no explicit duties upon him. In determining the personal liability of the corporate president, the United States Supreme Court first looked to the Act's purpose — protecting the public from adulterated or misbranded food — and found that it warranted the imposition upon corporate officers of "not only a positive duty to seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur."*Id*. at 672 citing *United States v. Dotterweich*, 320 U.S. 277 (1943). While acknowledging that the duties imposed are unquestionably demanding, the Court reasoned that "they are no more stringent than the public has a right to expect of those who voluntarily assume positions of authority in business enterprises whose services and products affect the health and well-being of the public that supports them." *Id*. at 672. Having determined that the defendant as president of the corporation had responsibility and authority either to prevent or promptly to correct the corporate violations complained of, the Court then held the defendant-president personally liable for his failure to so act.

The Court considered two primary factors in setting forth the standard for determining the personal liability of responsible corporate officers for corporate violations of the Federal Food, Drug and Cosmetic Act: the first factor was the nature of the statute involved; the second, the harm sought to be prevented. The relevant statutory provision in *Park* dispensed with the requirement of "awareness of some wrongdoing," *i.e.*, imposed strict or absolute liability upon persons engaging in the prohibited conduct. *Id*. at 668. The Court stated that when faced with such a statute an omission or failure to act is a sufficient basis for a responsible corporate agent's liability; it is enough that such agent, by virtue of his relationship to the corporation, had the power to prevent the unlawful act.[12] *Id*. at 671. Even more significant to the

[12] The responsible corporate officer doctrine applied in *Park* was first enunciated by the United States Supreme Court in United States v. Dotterweich, 320 U.S. 277 (1943). The doctrine dictates that a corporate offense is committed "by all who . . . have . . . a responsible share in the furtherance of the transaction which the statute

Court's holding in *Park* was the nature of the harm sought to be prevented. The Court stated that "the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors." *Id.* quoting *Smith v. California*, 361 U.S. 147, 152 (1959). Unless corporate officers are held personally accountable, the Court recognized, any fine imposed to deter violations of the law will merely amount to a "license fee for the conduct of an illegitimate business" that endangers the public welfare. *United States v. Park*, 421 U.S. at 669 quoting *United States v. Dotterweich*, 320 U.S. at 282-83.

In the instant case, PHR Ch. 43, Sec. 7 similarly imposes strict liability upon persons and institutions who engage in unlawful open burning. Infractions of PHR Ch. 43, Sec. 7 constitute penal code violations,[13] HRS § 342-11(b), and, as such, require no proof of scienter.[14] HPC § 702-212(1). Moreover, like the statute in *Park,* the pertinent regulation here protects a significant public interest — the public interest in clean air free from harmful pollutants. The open burning prohibition is part of a comprehensive regulatory scheme designed to control all sources of air pollution and thereby to protect the public health. *See* Department of Health, Public Health Regulations, Chapter 43, Air Pollution Control. We find that the regulation's purpose of safeguarding the public from the hazards of air pollution similarly warrants the impo-

---

outlaws." *Id.* at 284; United States v. Park, 421 U.S. at 669. Corporate officers vested with the responsibility, and power commensurate with that responsibility, to devise measures necessary to ensure compliance with the law are deemed to bear a "responsible relationship" to, or have a "responsible share" in, corporate violations and as a result may be held criminally accountable. United States v. Park, 421 U.S. at 672.

[13] Penal code violations do not technically constitute crimes and therefore do not give rise to any civil disability based upon conviction of a criminal offense. HPC § 701-107(5). Open burning infractions are punishable only by fine. HRS § 342-11(b).

[14] The public health regulation conforms to the modern trend of not requiring proof of scienter in air pollution prosecutions. Annot., *Necessity of Showing Scienter, Knowledge, or Intent, in Prosecution for Violation of Air Pollution or Smoke Control Statute or Ordinance*, 46 A.L.R. 3d 758 (1972).

sition of a high standard of care upon officers of a corporation to insure corporate compliance with the law. Therefore, in accordance with the principles set forth in *Park*, we hold that high corporate officers who possess managerial authority bear a personal responsibility to the public to exercise reasonable care to discover any violation of the open burning regulation, to remedy any such violation of which the officer knows or should have known, and to prevent future violations.[15] To find otherwise, we believe, would be to permit corporate officers to escape liability by claiming ignorance regardless of the harm wrought on the public by their inattentiveness and to encourage abdication of duty.[16]

In view of the standard of care imposed upon corporate officers by PHR Ch. 43, Sec. 7, we find Mrs. Weber, as president and treasurer of KAW, negligent in failing to exercise reasonable care to discover, remedy and prevent corporate violations of the open burning prohibition.[17] In its findings of fact and conclusions of law, the trial court found that KAW's violations of PHR Ch. 43, Sec. 7 were in disregard of

---

[15] The application of the *Park* decision in areas other than corporate violations of the Federal Food, Drug and Cosmetic Act has been noted by courts in other jurisdictions. *See, e.g.,* United States v. Frezzo Brothers, Inc., 602 F.2d 1123, 1130 n. 11 (1979) (prosecution of corporation and its principal officers for violations of the Federal Water Pollution Control Act); United States v. Sexton Cove Estates, Inc., 526 F.2d 1293, 1300 n. 19 (1976) (prosecution of corporation and its former president for violations of the Rivers and Harbors Act).

[16] Our holding is not unduly harsh. Personal liability is not to be imposed for all corporate violations of PHR Ch. 43, Sec. 7; it is to be imposed only with respect to those violations that the responsible officer could have remedied or prevented in the exercise of reasonable care. Courts may consider numerous factors in determining whether a corporate officer has been negligent and, therefore, should be held liable for a corporate violation. Relevant factors include, but are not limited to, the degree of harm to the public, the egregiousness of the violations, the supervisory authority and control vested in a particular corporate position, and the size of the corporation. In this manner, mechanical applications of the rule may be avoided while instances of negligent supervision resulting in corporate violations may be justly punished and repetitions of such behavior deterred.

[17] By basing Mrs. Weber's personal liability for KAW's violations of PHR Ch. 43, Sec. 7 on her role as an officer of the corporation, we need not reach the question of whether solely in her position as director she could also have been held liable.

repeated warnings and were "open, continuous and flagrant." By H. Roy Weber's own admission, KAW openly burned thousands of automobiles over the course of seven years. In 1976, KAW's air polluting activities spurred one-half of the citizens' complaints received by the Department of Health. Given the constant and egregious nature of KAW's violations, the slightest effort by Mrs. Weber to carry out her duties as president and to become generally informed about the corporation's affairs would have made her aware of the corporation's illegal activity. Although she failed to do even this much, one can reasonably infer that as the only directors, officers and employees in the closely held corporation, Mrs. Weber, as well as Mr. Weber, personally benefitted from KAW's unlawful operations. In light of these circumstances, we find no error by the trial court in holding Mrs. Helen Weber personally liable for KAW's repeated violations of PHR Ch. 43, Sec. 7.

Affirmed.

*John E. Parks* for defendants-appellants.

*Laurence K. Lau*, Deputy Attorney General, for plaintiff-appellee.